UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CORVETTE MCCAMPBELL,

    Plaintiff,

        v.                            CAUSE NO. 3:21-CV-152-RLM-MGG

MIAMI CORRECTIONAL FACILITY,
et al.,

    Defendants.

## OPINION AND ORDER

Corvette McCampbell, a prisoner proceeding without a lawyer, filed a motion for leave to amend his complaint. He filed the motion before the deadline for amending the pleadings, and Mr. Campbell hasn't previously amended his complaint. In the interest of justice, the court grants the motion. *See* FED. R. CIV. P. 15(a)(1)(A).

The court must screen the amended complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915A. To proceed beyond the pleading stage, a complaint must contain sufficient factual matter to "state a claim that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). The court must nevertheless read a pro se complaint liberally. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

As with his original complaint, Mr. McCampbell alleges that beginning in July 2017, while he was incarcerated at Miami Correctional Facility (MCF),[1] he began to experience blurred vision, double vision, and headaches. MCF nurse practitioner Kim Myers saw him several times. His symptoms became progressively worse, and he also began to experience a swollen eyelid, drooping on the right side of his face, watering eyes, and other symptoms. A CT scan of his head at an outside facility revealed no abnormalities, but the prison eye doctor was concerned that his symptoms were "not a vision issue and should be further investigated" with additional imaging to rule out a tumor. Mr. McCampbell claims that nothing further was done to follow up on the eye doctor's concern for nearly two years.

Nurse Practitioner Myers treated him with steroids during this period, but they only alleviated his symptoms for a short time. She later diagnosed him with Bell's Palsy, a disease affecting the facial nerve. He underwent an x-ray of his facial bones, which was normal. He submitted multiple health care requests to LeAnna Ivers, MCF's "head nurse," but she allegedly did nothing except to tell him that his x-ray had been normal. Mr. McCampbell claims the severe symptoms he reported to her "should have been enough to know that something was wrong." His medical providers, including Dr. Noe Marandet, didn't recommend an MRI until more than a year and half later. He finally underwent an MRI at an outside facility, and it was determined that he had a large "orbital mass" behind his right eye. He claims that as

---

[1] Mr. McCampbell has since been transferred to Plainfield Correctional Facility. (ECF 1 at 1.)

2

a result of the delay in receiving a proper diagnosis and treatment, he completely lost his vision in his right eye and has only minimal sight in his left eye.

Inmates are entitled to adequate medical care under the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To state a claim, a prisoner must allege (1) he had an objectively seriously medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is objectively "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. Greeno v. Daley, 414 F.3d 645, 653 (7th Cir. 2005). On the second prong, inmates are "not entitled to demand specific care," and courts generally "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." Walker v. Wexford Health Sources, Inc., 940 F.3d 954, 965 (7th Cir. 2019). A prisoner isn't required to show that he was "literally ignored" to establish deliberate indifference. Berry v. Peterman, 604 F.3d 435, 441 (7th Cir. 2010). "[I]nexplicable delay in responding to an inmate's serious medical condition can reflect deliberate indifference," particularly where "that delay exacerbates an inmate's medical condition or unnecessarily prolongs suffering." Goodloe v. Sood, 947 F.3d 1026, 1031 (7th Cir. 2020) (citations and internal quotation marks omitted). A "prison physician cannot simply continue with a course of treatment that he knows is ineffective in treating the inmate's condition." Arnett v. Webster, 658 F.3d 742, 754 (7th Cir. 2011).

Giving Mr. McCampbell the inferences to which he is entitled at this stage, he has alleged a plausible Eighth Amendment claim against Nurse Practitioner Myers, Head Nurse Ivers, and Dr. Marandet.[2] He alleges that Nurse Practitioner Myers failed to recognize the seriousness of his symptoms, misdiagnosed him, and treated him for more than a year with an ineffective medication. He further alleges that he repeatedly made Head Nurse Ivers aware of the serious symptoms he was experiencing, but she brushed off his concerns by telling him that his x-ray was normal. He claims that the prison eye doctor noted as early as 2017 that further imaging was needed to rule out a tumor, but Dr. Marandet did nothing to follow up on this concern until 2019, when Mr. McCampbell had already lost much of his vision. He will be permitted to proceed against these defendants on a claim for money damages.

Mr. McCampbell also sues "Wexford Health," the private company that employed medical staff at MCF during these events.[3] A private company may be held

---

[2] Mr. McCampbell's complaint isn't entirely clear as to the defendants he is suing, but he discusses the failure of Nurse Practitioner Myers, Head Nurse Ivers, and Dr. Marandet to adequately treat him in the narrative section. He lists "Wexford Health Staff" as a defendant, and it appears he intended to encompass these individuals within that label. The court also presumes that he didn't intend to abandon his claim against Nurse Practitioner Myers, which he was granted leave to proceed on in the original screening order. In light of his pro se status, the court will presume that he intended to assert claims against all three individuals. Because "Wexford Health Staff" is not a "person" that can be held liable under 42 U.S.C. § 1983, this defendant will be dismissed.

[3] Wexford Health's contract with Indiana Department of Correction ended on July 1, 2021, and it was replaced by a different company, Centurion Health. *See* Centurion Health Provides Correctional Health for Indiana Department of Correction, Cision PR Newswire, July 12, 2021, *available at* https://www.prnewswire.com/news-releases/centurion-health-provides-correctional-health-for-indiana-department-of-correction-301331594.html (last visited Sept. 8, 2021). The amended complaint doesn't contain any allegations about Centurion Health.

liable for constitutional violations when it performs a state function. *See* Hildreth v. Butler, 960 F.3d 420, 422 (7th Cir. 2020). But there is no general supervisory liability under 42 U.S.C. § 1983, and Wexford Health can't be held liable solely because it employed the medical professionals involved in Mr. McCampbell's care. J.K.J. v. Polk Cty., 960 F.3d 367, 377 (7th Cir. 2020). A private company performing a public function can also be held liable to the same extent as a government actor under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978). *See* Rice v. Corr. Med. Servs., 675 F.3d 650, 675 (7th Cir. 2012). Nothing in the amended complaint suggests Wexford Health has an official policy or custom that caused his injury. Rather, Mr. McCampbell describes failings by the individuals responsible for providing his care. He can't proceed against this corporate defendant.

Mr. McCampbell also names Warden William Hyatte as a defendant because he is the individual responsible for overseeing operations in the prison. That's not a viable basis for imposing liability under 42 U.S.C. § 1983. J.K.J. v. Polk Cty., 960 F.3d 367, 377 (7th Cir. 2020). Liability under 42 U.S.C. § 1983 is based on personal responsibility, and the warden cannot be held liable for the misdeeds of other prison staff. Mitchell v. Kallas, 895 F.3d 492, 498 (7th Cir. 2018); Burks v. Raemisch, 555 F.3d 592, 596 (7th Cir. 2009). Supervisory prison staff can be held liable for deliberate indifference only when they "know about the conduct and facilitate it, approve it, [or] condone it." Doe v. Purdue Univ., 928 F.3d 652, 664 (7th Cir. 2019). There is no plausible basis in the amended complaint to infer that Warden Hyatte was subjectively aware that Mr. McCampbell was receiving constitutionally inadequate

medical care, or that he facilitated or condoned the failure to provide him proper care for his eye condition. As a non-medical staff member, he was entitled to defer to medical staff regarding the proper course of treatment. Burks v. Raemisch, 555 F.3d at 596. Mr. McCampbell hasn't alleged a plausible deliberate indifference claim against the warden.

Finally, Mr. McCampbell names MCF as a defendant, but MCF is a building, not a person or a policy-making body that can be held liable for damages under 42 U.S.C. § 1983. *See* Smith v. Knox County Jail, 666 F.3d 1037, 1040 (7th Cir. 2012); Sow v. Fortville Police Dep't, 636 F.3d 293, 300 (7th Cir. 2011). This defendant will be dismissed.

For these reasons, the court:

(1) GRANTS the plaintiff leave to amend his complaint (ECF 26);

(2) DIRECTS the clerk to docket the proposed amended complaint (ECF 26-1) as a separate docket entry;

(3) GRANTS the plaintiff leave to proceed against Kim Myers, LeAnna Ivers, and Dr. Noe Marandet in their personal capacity for monetary damages for failing to provide adequate medical care for a mass behind his right eye in violation of the Eighth Amendment;

(4) DISMISSES all other claims;

(5) DISMISSES Warden Hyatte, Miami Correctional Facility, Wexford Health, and Wexford Medical Staff as defendants;

6

(6) DIRECTS the clerk to request a Waiver of Service from (and if necessary, the United States Marshals Service to use any lawful means to locate and serve process on) Kim Myers, LeAnna Ivers, and Dr. Noe Marandet at Centurion Health, and to send them a copy of this order and the amended complaint pursuant to 28 U.S.C. § 1915(d);

(7) ORDERS Centurion Health to provide the United States Marshal Service with the full name, date of birth, and last known home address of any defendant who does not waive service, to the extent this information is available; and

(8) ORDERS Kim Myers, LeAnna Ivers, and Dr. Noe Marandet to respond, as provided in the Federal Rules of Civil Procedure and N.D. Ind. L.R. 10-1(b), only to the claim for which the plaintiff has been granted leave to proceed in this screening order.

SO ORDERED on September 8, 2021

s/ Robert L. Miller, Jr.
JUDGE
UNITED STATES DISTRICT COURT